[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 15, 2005
THOMAS K. KAHN
CLERK

No. 05-11833
Non-Argument Calendar
_____

D. C. Docket No. 00-00044-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LEONARDO RAMON CABALLERO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 15, 2005)

Before ANDERSON, BIRCH and FAY, Circuit Judges.

PER CURIAM:

Leonardo Ramon Caballero appeals his sentence of 46 months' imprisonment for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The district court summarily re-imposed this sentence after granting Caballero's motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255, based on his counsel's failure to file a timely appeal of his sentence following re-sentencing. Caballero argues on appeal that his plea of guilty was not knowing and voluntary. He also contends that the district court erred in denying his requests that the court (1) order his sentence to run concurrently with an unrelated sentence, and (2) impose a more "reasonable" sentence, in light of Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and United States v. Booker, 543 U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). For the reasons set forth more fully below, we affirm.

In a written plea agreement, Caballero agreed to plead guilty to the § 922(g)(1) offense. In May 2001, during his plea colloquy, the court confirmed, among other things, that Caballero (1) had received a copy of the indictment and the plea agreement, (2) had "fully discussed" these documents with his counsel, and (3) understood that his charge was a felony. The court also verified that Caballero agreed that, if his case had proceeded to trial, the government could have established beyond a reasonable doubt that (1) two firearms were recovered from

2

Caballero's home, (2) a record check revealed that Caballero was a convicted felon, and (3) both firearms were manufactured outside of Florida. The court, however, did not specifically discuss each of the elements of a § 922(g)(1) offense.

During Caballero's first sentencing hearing, the court determined that Caballero had a total offense level of 19 and a criminal history category of II, resulting in a guideline range of 33 to 41 months' imprisonment. However, after deciding that Caballero's criminal history category of II did not adequately represent his past criminal activity, the court decided to depart upward to a criminal history category of V, with a resulting guideline range of 57 of 71 months' imprisonment.[1] The court then sentenced Caballero to 71 months' imprisonment, 3 years' supervised release, and a $100 special assessment fee ("Caballero I"). The court also ordered that Caballero's term of imprisonment be served consecutively with the 120-month sentence that he was serving in Case No. 00-CR-00400-001-ST—an unrelated federal fraud case from the State of Utah.

On direct appeal, Caballero argued that the district court had abused its discretion by departing upwards from a criminal history category of II to V,

---

[1] Although the court did not identify at sentencing under what authority it was departing, it presumably was relying on U.S.S.G. § 4A1.3. See U.S.S.G. § 4A1.3(a) (authorizing an upward departure when the criminal history category "substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes").

3

without proceeding sequentially through the horizontal categories and addressing whether each higher category adequately represented his criminal history. Caballero, however, did not challenge his plea of guilty. We vacated and remanded for re-sentencing, based on our conclusion that, before departing upward to criminal history category V, the district court had to consider whether criminal history category III or IV would be sufficient.

On remand, the district court sentenced Caballero to 46 months' imprisonment, 3 years' supervised release, and $100 special assessment fee, with Caballero's term of imprisonment again to run consecutively with his Utah sentence ("Caballero II"). After Caballero's counsel filed an untimely notice of appeal from Caballero II, we dismissed Caballero's appeal for lack of jurisdiction, Caballero subsequently filed a pro se § 2255 motion, alleging that his counsel provided ineffective assistance by failing to file a timely appeal from Caballero II. In an order granting this § 2255 motion, the district court directed that the judgment in Caballero II be vacated, and that the case be set for re-sentencing.

On March 24, 2005, during a re-sentencing hearing at which Caballero was represented by counsel, the district court advised the parties that it intended to re-impose the same sentence that it had imposed in Caballero II, in accordance with

4

our holding in United States v. Phillips, 225 F.3d 1198, 1201 (11th Cir. 2000).[2]

Caballero argued that the court, instead, should sentence him de novo. Caballero specifically requested that the court (1) order the sentence in Caballero II to run concurrently with Caballero's Utah sentence, and (2) impose a more reasonable sentence within his original guideline range of 33 to 41 months' imprisonment, pursuant to "the spirit of Booker[.]"[3]  In support, Caballero testified that, since he committed the instant offense, he had (1) become an ordained minister; (2) served as a minister in prison; (3) completed multiple vocational courses; and (4) changed his attitudes about serving the community and being a good husband.  Rejecting this argument, the court "re[-]impose[d] the sentence that was previously imposed," along with re-ordering that Caballero's term of imprisonment run

_____

[2] Alternatively, the court explained that Caballero had not shown why the court should impose a different sentence, and that, post-Booker, the court had even greater flexibility to impose a longer sentence.

[3] In Booker, the Supreme Court held that the mandatory nature of the federal guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial. See 543 U.S. at ___, 125 S.Ct. at 749-51.  Nevertheless, in a second and separate majority opinion, the Booker Court concluded that, to best preserve Congress's intent in enacting the Sentencing Reform Act of 1984, the appropriate remedy was to "excise" two specific sections—18 U.S.C. § 3553(b)(1) (requiring a sentence within the guideline range, absent a departure) and 18 U.S.C. § 3742(e) (establishing standards of review on appeal, including de novo review of departures from the applicable guideline range)—thereby effectively rendering the federal guidelines advisory only. See id. at ___, 125 S.Ct. at 764.  Thus, the guideline range is now advisory; it no longer dictates the final sentencing result but instead is an important sentencing factor that the sentencing court is to consider, along with the factors contained in 18 U.S.C. § 3553(a). See id. at ___, 125 S.Ct. at 764-65.  Moreover, the Booker Court concluded that courts of appeals now must review sentences for unreasonableness. See id. at ___, 125 S.Ct. at 767.

consecutively with Caballero's Utah sentence. The court also confirmed that Caballero understood that he had the right to appeal this sentence.

As discussed above, Caballero argues on appeal that the court erred in accepting his plea of guilty to the § 922(g)(1) offense without first ensuring that he understood the nature of this offense. Caballero concedes that (1) the court asked him whether he had received a copy of his indictment and had fully discussed his case with his counsel, (2) the court informed him that the offense was a felony, and (3) he agreed with the government's factual basis. Nevertheless, Caballero contends that the court failed to comply with Fed.R.Crim.P. 11, by not explaining during his plea colloquy the specific elements of his offense. The government responds that Caballero abandoned this argument by failing to raise it in his appeal from Caballero I.

"Under the law-of-the case doctrine, an issue decided at one stage of a case is binding at later stages of the same case." United States v. Escobar-Urrego, 110 F.3d 1556, 1560 (11th Cir. 1997). This doctrine, which has multiple arms, "ha[s] developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." Id. Under the only arm of this doctrine that is applicable in the instant case,

> a legal decision made at one stage of the litigation, unchallenged in a
> subsequent appeal when the opportunity existed, becomes the law of

6

the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.

Id.

Applying this arm of the law-of-the-case doctrine in Escobar-Urrego, we concluded that the defendant waived, by failing to raise in a prior appeal, a challenge to the district court's decision that he imported 2,036 grams of "usable" cocaine. Id. Furthermore, we concluded that no exceptions to this doctrine existed, that is, (1) evidence in any subsequent trials was not substantially different, (2) controlling authority had not since made a contrary decision of the law applicable, and (3) the decision was not clearly erroneous and would not "work a manifest injustice." Id. at 1561. Similarly, in United States v. Fiallo-Jacome, 874 F.2d 1479 (11th Cir. 1989), we refused to consider an issue that the defendant failed to raise in his first appeal, explaining that the defendant should not be given "two bites at the appellate apple." See id. at 1481-83; see also United States v. Mesa, 247 F.3d 1165, 1171 n.6 (11th Cir. 2001) (noting that, by failing to raise an issue during his first appeal, the defendant abandoned that argument on remand).

In the instant case, Caballero argued in his appeal of Caballero I that the court abused its discretion by departing upwards from a criminal history category of II to V, without proceeding sequentially through the categories and addressing

7

whether each higher category adequately represented his criminal history. He, however, did not challenge his plea of guilty. Under the law-of-the-case doctrine, therefore, Caballero waived any challenges to his plea of guilty by not raising them in Caballero I. See Escobar-Urrego, 110 F.3d at 1560.

Additionally, Caballero has not identified any exceptions to this doctrine, such as new evidence at trial, controlling authority that has undermined the court's determination that Caballero's plea was free and voluntary, or proof that the court's decision was clearly erroneous and would "work a manifest injustice." See id. at 1561. Indeed, because Caballero failed to challenge his plea in the district court, our review only would be for plain error. See United States v. Peters, 403 F.3d 1263, 1270 (11th Cir. 2005). "Under plain error review, which is authorized by Fed.R.Crim.P. 52(b), federal appellate courts have only a limited power to correct errors that were forfeited because they were not timely raised in the district court." Id. at 1270-71 (internal quotations and marks omitted). Thus, we:

> may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights. . . . Even then, [this Court] will exercise [its] discretion to rectify the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings.

Id. at 1271 (internal quotations and marks omitted).

To the extent Caballero is attempting to argue that the district court did not comply with Rule 11, at the time that Caballero plead guilty, this rule provided, in relevant part, that

> Before accepting a plea of guilty . . ., the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands . . . the nature of the charge to which the plea is offered.

Fed.R.Crim.P. 11(c)(1) (2001.[4] "In evaluating whether a defendant has shown that his [Rule 11] rights were substantially affected or prejudiced, we have examined the three 'core objectives' of Rule 11, which are: (1) ensuring that the guilty plea is free of coercion; (2) ensuring that the defendant understands the nature of the charges against him; and (3) ensuring that the defendant is aware of the direct consequences of the guilty plea." United States v. Monroe, 353 F.3d 1346, 1354 (11th Cir. 2003) (citation omitted).  We may consult the whole record when considering the effect of any error on substantial rights, see id. at 1350, and we

---

[4] Effective December 1, 2002, the provision guaranteeing a defendant's right to be informed about the nature of the charge is contained in Rule 11(b)(1)(G), which similarly provides that:

> Before the court accepts a plea of guilty . . ., the defendant must be placed under oath, and the court must address the defendant personally in open court.  During this address, the court must inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading . . ..

See Fed.R.Crim.P. 11(b)(1)(G) (2002).

have upheld plea colloquies wherein courts have failed to address an item expressly required by Rule 11 if the overall plea colloquy adequately addressed these three "core objectives," see id. at 1354.

Furthermore, the Supreme Court has concluded that "[i]t is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding." United States v. Dominguez Benitez, 542 U.S. 74, ___, 124 S.Ct. 2333, 2339, 159 L.Ed.2d 157 (2004). Otherwise,

> a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea. A defendant must thus satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding.

Id., 542 U.S. at ___, 124 S.Ct. at 2340 (internal quotations and citations omitted).

In the instant case, although Caballero is arguing that a "core objective" of Rule 11 was not addressed because the court did not explicitly discuss each of the elements of his § 922(g)(1) offense, examining the totality of his plea colloquy, the court confirmed that Caballero (1) had received a copy of the indictment and the plea agreement, (2) had "fully discussed" these documents with his counsel, and (3) understood that his charge was a felony. The court also verified that Caballero

10

agreed that the government could have established beyond a reasonable doubt that (1) two firearms were recovered from Caballero's home, (2) a record check revealed that Caballero was a convicted felon, and (3) both firearms were manufactured outside of Florida.

Moreover, Caballero's § 922(g)(1) offense of possession of a firearm by a convicted felon was not a complex offense. See United States v. Camacho, 233 F.3d 1308, 1314 (11th Cir. 2000) (explaining that, for simple charges, "a reading of the indictment, followed by an opportunity to ask questions about it, usually will suffice" (quotation omitted)); see also United States v. Jones, 143 F.3d 1417, 1419 (11th Cir. 1998) (stating that "[t]he crime of being a felon in possession of a firearm is easily understood").[5] Caballero also has not contended, much less offered evidence showing, that, but for the court's failure to instruct him explicitly on the elements of a § 922(g)(1) offense, he would not have plead guilty. See Dominguez Benitez, 542 U.S. at ___, 124 S.Ct. at 2340. Thus, Caballero has failed to show that the district court's application of the law-of-the-case doctrine in this case resulted in a "manifest injustice."

---

[5] Section 922(g)(1) specifically provides that "[i]t shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition . . .." See 18 U.S.C. § 922(g)(1).

11

Caballero also argues that the district court erred in summarily reimposing his consecutive 46-month sentence following re-sentencing. Caballero explains that, under the Supreme Court's intervening decision in Booker, the district court should have examined whether this sentence was reasonable. Moreover, Caballero argues that this sentence was not reasonable in light of acts he has taken, and changes in attitude that he has made, since beginning his term of incarceration.

We determined in Phillips as follows:

> When the district courts of this circuit conclude that an out-of-time appeal in a criminal case is warranted as the remedy in a § 2255 proceeding, they should effect that remedy in the following way: (1) the criminal judgment from which the out-of-time appeal is to be permitted should be vacated; (2) the same sentence should then be reimposed; (3) upon re[-]imposition of that sentence, the defendant should be advised of all the rights associated with an appeal from any criminal sentence; and (4) the defendant should be advised that the time for filing a notice of appeal from that re-imposed sentence is ten days, which is dictated by [Fed.RApp.P. 4(b)(1)(A)(i)].

Phillips, 225 F.3d at 1201.

Here, the district court ordered that the judgment in Caballero II be vacated and that this case be set for re-sentencing based on its adoption of the magistrate's § 2255 finding that Caballero's trial counsel failed to timely appeal from Caballero II. Thus, the court did not err during re-sentencing when it re-imposed the same sentence that it had imposed in Caballero II, and it confirmed that Caballero understood his right to appeal it. See Phillips, 225 F.3d at 1201.

12

To the extent Caballero is arguing, or at least implying, that this procedure was altered by the Supreme Court's subsequent decision in <u>Booker</u>, he has failed to cite to any supporting authority for this proposition. Indeed, in <u>United States v. Parrish</u>, No. 05-10940, slip op. at 187 (11th Cir. Sept. 28, 2005), we recently reiterated post-<u>Booker</u> that, when a district court concludes that an out-of-time appeal in a criminal case is warranted as the remedy in a § 2255 proceeding, the court should vacate the defendant's prior sentence and then reimpose that sentence to allow the defendant the opportunity to timely appeal it. We, thus, concluded in <u>Parrish</u> that the district court did not violate the defendant's rights under either Fed.R.Crim.P. 43(a),[6] or the Due Process Clause of the Fifth Amendment, or, otherwise err, in re-sentencing the defendant, when it failed to conduct a new sentencing hearing. <u>See id.</u>, slip op. at 188.

Accordingly, we conclude that we are precluded by the law-of-the-case doctrine from reviewing Caballero's guilty plea. Furthermore, we conclude that the district court did not err in summarily re-imposing Caballero's sentence after it granted his § 2255 motion based on his counsel's untimely appeal of this sentence. We, therefore, affirm.

**AFFIRMED.**

---

[6] Rule 43(a) provides that, unless this rule or another rule provides otherwise, "the defendant must be present at . . . sentencing." <u>See</u> Fed.R.Crim.P. 43(a)(3).

13